E-FILED
Tuesday, 05 December, 2017  11:40:29 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| Benjamin Mann and Samantha M. Wade, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 17-cv-2300 |
| v. | ) ) | |
| City of Urbana Police Officers Jennifer Difanis, Colby G. Wright, Sara M. Links, Seth R. King, Jay Loschen, Chad Burnett, Don C. McClellan, Adam Marcotte, John Franquemont, Sgt. Zach Mikalik, and  as yet Unknown Officers, the City of Urbana, a municipal corporation, University of Illinois Police Officer Chris Elston, and Board of Trustees of the University of Illinois, Defendants. | ) ) ) ) ) ) ) ) ) ) ) | JURY TRIAL DEMANDED |

## COMPLAINT AT LAW

NOW COMES, Benjamin Mann ("Mr. Mann") and Samantha Wade ("Ms. Wade") (collectively referred to herein as "Plaintiffs"), by and through their attorneys, Nathan & Kamionski LLP, and state as follows:

## INTRODUCTION

1.      This is an action for civil damages brought pursuant to 42 U.S.C. §1983 for the deprivation of Plaintiff's constitutional rights. This Court has jurisdiction pursuant to 28 U.S.C. §§1331 and 1343.

2.      Venue in this district is proper pursuant to 28 U.S.C. § 1391 (b), because the facts which give rise to the claims asserted herein occurred in the Central District of Illinois.

3.      Benjamin Mann is an African-American man who, at all times relevant hereto, was present in, and a resident of, the Central District of Illinois.

1

4.      Samantha Wade, is woman who, at all times relevant hereto, was present in, and a resident of, the Central District of Illinois.

5.      Defendants, Urbana Police Officers Jennifer Difanis, Colby G. Wright, Sara M. Links, Seth R. King, Sergeant Jay Loschen, Officer Chad Burnett and additional officers as yet to be identified ("Defendant Officer Group 1") were at all times material hereto, duly appointed Urbana Police Officers employed by the City of Urbana acting in the capacity of sworn law enforcement officials and therefore acting under color of law.

6.      Defendants, Urbana Police Officers Jennifer Difanis, Chad Burnett, Don C. McClellan, Adam Marcotte, John Franquemont, Sergeant Zach Mikalik, and additional officers as yet to be identified and Defendant University of Illinois Police Officer Chris Elston ("Defendant Officer Group 2") were, with the exception of Officer Elston, at all times material hereto, duly appointed Urbana Police Officers employed by the City of Urbana acting in the capacity of sworn law enforcement officials and therefore acting under color of law.

7.      Officer Elston was, at all times material hereto, a duly appointed University of Illinois Police Officer employed by the Board of Trustees of the University of Illinois, acting in the capacity of sworn law enforcement officials and therefore acting under color of law

8.      The Defendant, City of Urbana, Illinois (hereinafter "City"), at all relevant times, was an Illinois Municipal Corporation, duly chartered and organized under the Laws of the State of Illinois, located entirely within this judicial district.

9.      The Defendant, Board of Trustees of the University of Illinois (hereinafter "University"), is the corporate governing body which operates the University of Illinois at Urbana-Champaign and the University of Illinois Police Department, located within this judicial district.

10.     Because the City of Urbana is part of a larger metropolitan area, the Urbana Police Department works closely with the Champaign Police Department and the University of Illinois Police Department.

## FACTUAL SUMMARY

11.     Mr. Mann is a well-known civil rights activist within the Champaign-Urbana local community and he has been the subject of several articles in the local press.

12.     Mr. Mann successfully brought a police misconduct lawsuit against the now disgraced City of Champaign police officer Matt Rush.

13.     In part because of Mr. Mann's lawsuit against Officer Rush and several of his fellow officers, the City of Champaign terminated Officer Rush's employment. Eventually, the City of Champaign settled Mr. Mann's lawsuit against it and settled at least two other lawsuits involving Officer Rush brought by Kisica Seets, who was kneed by Rush on video, and by Precious Jackson, who was violently slammed to the ground without reasonable justification.

14.     Although Mr. Mann has since moved to the City of Urbana, Mr. Mann has been repeatedly victimized by local law enforcement, including officers from the City of Urbana Police Department, in retaliation for Mr. Mann's exercise of his right to free speech under the First Amendment.

### Incident Dated March 19, 2017

15.     On March 19, 2017, Plaintiffs were driving home with Ms. Wade's nine-year-old son when they nearly got into an auto accident with a woman named Koraysia Pierce. This woman yelled and screamed and, eventually, followed Plaintiffs to the area of their residence in Urbana, Illinois.

16.     Anticipating some type of confrontation, Ms. Wade directed her son to go

upstairs, away from any argument that appeared likely to ensue. Mr. Mann called 911 for help.

17.     Plaintiffs were then assaulted by Ms. Pierce and three male individuals. One of these men had a gun.

18.     Instead of conducting legitimate police work, Defendant Officer Group 1, as well as several additional police officers, turned their dash cameras off or, pleading in the alternative, intentionally failed to initiate recording of their dash cameras. Defendant Officer Group 1 then handcuffed and detained Plaintiffs and her boyfriend.

19.     Defendant Officer Group 1 demanded that Ms. Wade give them the name of her child and physically obstructed Ms. Wade's path to her child by inserting their bodies in Ms. Wade's path.

20.     At this time, Defendant Officer Group 1 had no reason to believe that Plaintiffs had committed any crime.

21.     In fact, Mr. Mann had called 911. In addition, Defendant Officer Group 1 observed a vehicle not associated with Plaintiff's flee the scene and Defendant Officer Group 1's took a statement from a neighbor that firmly corroborated Plaintiffs' account that they were attacked by Koraysia Pierce and 3 male individuals.

22.     Due to the mistreatment Plaintiffs were being subjected to by Defendant Officer Group 1 and the other officers described above, Ms. Wade raised her voice in objection.

23.     Defendant Officer Group 1 warned Ms. Wade that she would be arrested if she "did not calm down."

24.     Defendant Officer Group 1 then arrested Ms. Wade and caused her to be charged with one count of Aggravated Assault and one count of Resisting or Obstructing a Peace Officer. These charges were false.

25.     Defendant Officer Group 1 also arrested Mr. Mann and caused him to be charged with aggravated assault and resisting arrest.

26.     During the course of Mr. Mann's arrest on March 19, 2017, Defendant King slammed Mr. Mann to the ground and badly twisted Mr. Mann's ankle.

27.     Plaintiffs were then detained in jail at the Champaign County Satellite Jail.

28.     Defendant Officer Group 1 fabricated police reports and other official documents in order to justify the illegal arrests of Plaintiffs.

29.     For example, Defendant Difanis falsely stated in her police report that Ms. Wade "stepped quickly and directly into me, chest bumping me" and that Ms. Wade "balled up [her] fist and swung the bag back as if she were going to sing it at me."

30.     In fact, Ms. Wade never did these things to Defendant Difanis and Defendant Wright admitted in her report that all Ms. Wade ever did was "yelling and screaming."

31.     Defendant Officer Group 1 also fabricated police reports regarding Mr. Mann, falsely stating that Mr. Mann "pulled away" and "reach[ed] toward his waistband" during his arrest.

32.     To make matters even worse, Defendant King then initiated a false report to the Illinois Department of Children and Family Services ("DCFS"), claiming without any basis that Ms. Wade neglected her child and placed him at risk of harm. Among the false statements that Defendant King made to DCFS, Defendant King claimed that Ms. Wade "chest bumped" Defendant Difanis.

33.     On or about May 8, 2017, DCFS determined that the charges initiated by Defendant King against Ms. Wade were "unfounded."

34.     Ms. Wade was tried before a jury of her peers and was acquitted on both counts

on August 23, 2017.

35.     Mr. Mann was tried by a jury of his peers in connection with the March 19, 2017 incident and was similarly acquitted on all counts on November 29, 2017.

### Incident Dated July 30, 2017

36.     On or about July 30, 2017 in the evening, Plaintiffs were at the home that they shared.

37.     Defendant Officer Group 2 arrived at Plaintiffs' home because of a police call for service reporting, on information and belief, nonspecific noises coming from the home.

38.     Defendant Officer Group 2 did not personally hear any noises or sounds coming from inside Plaintiffs' home.

39.     Defendant Officer Group 2 did not have a warrant to enter or to search Plaintiffs' home and there were no exigent circumstances that would require Defendant Officer Group 2 to immediately enter Plaintiffs' home without a warrant or consent.

40.     Mr. Mann answered the door when the police arrived.

41.     Mr. Mann asked Defendant Officer Group 2 if they had a warrant to enter his home

42.     One of the officers from Defendant Officer Group 2 told Plaintiffs that they did not need a warrant to enter the home because they need to make sure everyone was okay.

43.     Mr. Mann told the officers that they could not enter the home and attempted to close the door.

44.     During this time, Defendant Officer Group 2 observed a female individual inside the home who spoke in a calm voice, showed no injuries and gave Defendant Officer Group 2 no

reason to believe that she being coerced or threatened by Mr. Mann.

45.     In fact, the female, Ms. Wade, specifically told Defendant Officer Group 2 that she was not injured and did not need assistance.

46.     One or more of Defendant Officer Group 2 attempted to prevent Mr. Mann from closing the door to the home by moving their feet across the threshold.

47.     Mr. Mann told Defendant Officer Group 2 to move their feet out of his home.

48.     The Defendant Officer Group 2 refused to move their feet from Plaintiffs' home, preventing Mr. Mann from closing his door.

49.     One or more of the individuals from Defendant Officer Group 2 grabbed the door handle to prevent Plaintiffs from closing the door.

50.     Mr. Mann continually requested Defendant Officer Group 2 to move their feet and allow him to close his door, telling them they were breaking the law.

51.     Mr. Mann was eventually able to close the door to his home.

52.     Defendant Officer Group 2 continued to look for ways to harass Mr. Mann, despite the clear evidence that there was no lawful basis to enter Plaintiffs' home.

53.     Defendant Officer Groups 1 and 2 took the actions described herein because they are aware that they will not be disciplined for violating the rights of citizens and because they wanted to retaliate against Mr. Mann for filing a civil rights lawsuit against their fellow officers from the Champaign-Urbana law enforcement community.

54.     Defendant Officer Group 2 then entered Plaintiffs' home by force, using a battering ram to break open the door.

55.     Defendant Officer Group 2 entered Benjamin's home without a warrant, consent

by any occupant, or any exigent circumstance.

56.     Mr. Mann called 911 to inform the police that they could not enter his home and that there was no need for them to enter his home.

57.     Plaintiffs were extremely frightened and anxious because of the past civil rights violations they had endured by the Champaign and Urbana Police Departments, and the ongoing harassment from the Champaign and Urbana Police Departments directed at Mr. Mann and his community.

58.     Mr. Mann explained that there was no need for the police to enter his home and that he did not consent to them entering his home.

59.     Ms. Wade spoke to Defendant Officer Group 2 on the phone and specifically stated "My name is Samantha Wade, I'm not injured and I'm not harmed."

60.     Defendant Officer Group 2 again ignored Ms. Wade's statements.

61.     Without probable cause, a search warrant, or any legal basis to enter Plaintiffs' home, Defendant Officer Group 2 used a ram to break open the front door and enter it without lawful justification.

62.     Defendant Officer Group 2 damaged Plaintiffs' door in this way.

63.     Mr. Mann did not resist or obstruct the officers; however, Defendant Officer Group 2 arrested Mr. Mann without probable cause.

64.     Mr. Mann's arrest for resisting/obstruction lacked probable cause. As described herein, this false resisting/obstruction charge is part of a larger pattern and practice by the City of Urbana and its police officers to charge members of the public with false resisting/obstructing charges in order to cover up their misconduct in arresting people without the individual having committed any underlying crime.

65.    Urbana Police Officers know they will not face discipline for such actions because they are not properly trained  and they are not properly disciplined. The City of Urbana does not have a meaningful or effective disciplinary process and the City is aware the process is broken.

66.    Mr. Mann, in fear for his safety, and the safety of Ms. Wade, videotaped a portion of the arrest, including the illegal entry into his home by Defendant Officer Group 2.

67.    On July 31, 2017, the State charged Mr. Mann with the offense of Resisting or Obstructing a Peace officer, a Class A Misdemeanor, by Information. The Misdemeanor Obstruction charge against Mr. Mann alleged that he… "knowingly obstructed the performance of Don McClellan of an authorized act within his official capacity namely the investigation of a domestic battery complaint, knowing Don McClellan to be a peace officer engaged in the execution of his official duties, in that the defendant refused to open the door at the command of Don McClellan."

68.    Mr. Mann was forced to attend criminal court for months defending against the false criminal charges described herein.

69.    Mr. Mann worked with his attorney to challenge the wrongful July 2017 arrest and ensuing prosecution caused by the Defendant Officer Group 2.

70.    On October 16, 2017, Mr. Mann, through his counsel, filed a motion to dismiss the criminal case against him.

71.    Just two days later, the State dismissed the criminal case against Mr. Mann in a manner indicating his innocence and indicating that probable cause for the charges against Mr. Mann were lacking.

## COUNT I
### (Section 1983: 1st Amendment Retaliation)
### (Mr. Mann Against All Defendants)

72.     Plaintiff re-alleges and incorporates paragraphs 1-70 above as if fully restated and re-alleged herein.

73.     On March 16, 2014, Plaintiff was beaten and falsely arrested and prosecuted by Champaign Police Officers. Plaintiff sued in federal court and secured a $225,000 settlement from the City Champaign in December of 2015.   The main officer involved in Plaintiff's prior lawsuit, Matt Rush, was disgraced in several news articles and was ultimately separated.

74.     Since this time, Plaintiff has served as an example in his community that it is possible for citizens to stand up for themselves when local law enforcement overstep the great trust the public places within them.

75.     Since this time, members of the Urbana Police Department have regularly harassed Plaintiff, including the instances from March and July of 2017 described more fully above.

76.     It is well known that the Champaign, Urbana, and University of Illinois police departments operate closely with one another, the officers know each other, and the officers of one agency consider an "attack" on one agency to be an "attack" on the other.

77.     For example, Urbana Police Chief Patrick Connolly reported in a memorandum to Mayor Prussing on December 5, 2016, that because of Urbana's size, location, and limited resources, the Urbana Police Department relies on nearby police agencies for support.  One of those agencies is the Champaign Police Department.

78.     In yet another example, Officer Matt Rush, former of the Champaign Police Department was stopped by officers for the University of Illinois Police Department on

suspicion of drunk driving but the University of Illinois Police Officers involved in that case inexplicably took no law enforcement action against Officer Rush.

79.     In the manner described more fully above, Defendant Officer Group 1 and Defendant Officer Group 2 (collectively "Defendant Officers") violated Mr. Mann's rights as secured by the First Amendment of the U.S. Constitution. Mr. Mann's complaints and speech about the misconduct of Defendant Officers and other police officers that work and with Defendant Officers constituted protected speech and expression under the First Amendment.

80.     Mr. Mann's complaints were also protected under the Petition Clause of the First Amendment: Mr. Mann was petitioning the government for redress of grievances.

81.     In the manner described more fully above, Defendant Officers' actions caused Mr. Mann to suffer injuries that would chill a person of ordinary firmness from continuing to engage in protected activity.

82.     Mr. Mann's protected First Amendment activity was at least a motivating factor in Defendant Officers' decision to take the retaliatory actions of arresting and using excessive force against Mr. Mann in March and July of 2017.

83.     The Defendant Officers would not have unlawfully arrested Mr. Mann in March of 2017 or unlawfully forced their way into Plaintiff's home, falsely arrested plaintiff and wrongfully charged him with obstruction in July of 2017 in the absence of Mr. Mann's protected First Amendment activity.

84.     The misconduct described in this Count was objectively unreasonable and undertaken intentionally, with reckless and deliberate indifference to the rights of others, and in total disregard of the truth and of Mr. Mann's clear innocence.

85.     The Defendant Officers' actions were taken under color of law and within the

scope of their employment.

86.     As a result of Defendant Officers' misconduct described in this Count, Mr. Mann

suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional

pain and suffering, and other grievous and continuing injuries and damages as set forth above.

### COUNT II
### 42 U.S.C. § 1983: False Arrest
### (Mr. Mann Against All Defendant Officers and Ms. Wade Against Defendant Officer Group 1)

87.     Plaintiffs re-alleges and incorporate all preceding paragraphs as fully stated
herein.

88.     Defendant Officer Group 1 arrested Plaintiffs on March 19, 2017.

89.     Defendant Officer Group 2 arrested Mr. Mann again on or about July 30, 2017.

90.     At the time of the arrests, there was no probable cause to believe that Plaintiffs

had committed any crime or violation of any law.

91.     The acts of the Defendant Officers were an unreasonable, deliberate and

malicious deprivation of the Plaintiffs' constitutional guarantee to the Plaintiffs by the Fourth

Amendment of the Constitution and made applicable to the states by the Fourteenth

Amendment.

92.     As a result of the actions of Defendant Officers described more fully above,

the Plaintiffs suffered physical and emotional injuries, and other damages in violation of 42

U.S.C. §1983.

93.     The aforementioned actions of the Defendant Officers were the direct and

proximate cause of the violations the First, Fourth and Fourteenth Amendments of the

Constitution.

## COUNT III
### 42 U.S.C. § 1983: Fabrication of Evidence
### (Mr. Mann Against All Defendant Officers and Ms. Wade Against Defendant Officer Group 1)

94.    Plaintiffs re-allege and incorporate all preceding paragraphs as if fully re-stated herein.

95.    Defendant Officers, acting individually and in concert, as well as under color of law and within the scope of their employment, deprived Plaintiffs of their clearly established right to due process of law and a fair trial.

96.     In the manner fully described above, Defendant Officers deliberately fabricated evidence in order to justify the false arrests and malicious prosecutions of Plaintiffs.

97.    Defendant Officers also deliberately misled the prosecutors through their fabricated evidence and caused the prosecutors to wrongly believe that Ms. Wade had made unlawful physical contact with Defendant Difanis and that Mr. Mann had resisted police officers during the March and July arrests of 2017, as more fully described above.

98.    As a result of the unreasonable and deliberate misconduct described herein, Plaintiffs suffered loss of liberty, financial damages, emotional injuries,  and other damages in violation of the Fourteenth Amendment to the United States Constitution.

## COUNT IV
### 42 U.S.C. § 1983: Illegal Search
### (All Plaintiffs Against Defendant Officer Group 2)

99.    Plaintiffs re-allege and incorporate all preceding paragraphs as if fully re-stated herein.

100.    On or about July 30, 2017, Defendant Officer Group 2 did not have a search warrant or probable cause that would allow them to enter Plaintiffs' home.   Regardless, Defendant Officer Group 2 rammed open Plaintiffs' front door and entered their home.

101.    Defendant Officer Group 2 violated Plaintiffs' rights protected by the Fourth Amendment of the United States Constitution and the laws of Illinois when they unlawfully entered Plaintiffs' home without probable cause, a warrant, or exigent circumstances.

102.    The misconduct described in this Count and in more detail above was undertaken intentionally, with malice, willfulness, wantonness and reckless indifference to the rights of Plaintiffs.

103.    As a result of the above-described wrongful infringement of Plaintiffs' rights, they suffered financial and other damages, including but not limited to emotional stress and anguish.

104.    The aforementioned actions of the Defendant Officer Group 2 were the direct and proximate cause of the violations of the United States Constitution, specifically, the Fourth Amendment and Fourteenth Amendment.

## COUNT V
**Conspiracy Under Federal and State Law**
**(All Plaintiffs Against Defendant Officers)**

105.    Plaintiffs re-allege and incorporate all preceding paragraphs as if fully restated herein.

106.    While Defendant Officer Group 1 were still at the scene of Plaintiffs' March 2017 arrest and after they went back to their police station, Defendant Officer Group 1 had an in-person meeting where they agreed to falsely arrest Plaintiff despite the absence of probable cause.

107.    At the police station, upon information and belief, Defendants Difanis, King, and others agreed that Defendant King would make a false report against Ms. Wade to DCFS in order to create additional pressure upon Plaintiff and in an effort to cover up the false criminal

charges that Defendant Officer Group 1 were lodging against Plaintiffs.

108.    When Defendant Officer Group 2 arrived at Plaintiffs' home on July 30, 2017, upon information and belief, they agreed that they would enter the home regardless of whether it was lawful to do so and then arrest Mr. Mann regardless of whether he was committing any crime.

109.    Defendant Officer Group 2, whose members overlap with Group 1, conspired to illegally enter Plaintiffs' home and take Mr. Mann into custody irrespective of the unlawfulness of their actions because they wanted to punish Mr. Mann for exercising his First Amendment right to free speech as described above and because they wanted to make it more difficult for Plaintiffs to defend themselves against the false criminal charges brought against Plaintiffs by Defendant Group 1 back in March of 2017.

110.    In this manner, Defendant Officers conspired by concerted and overt action to accomplish an unlawful purpose.

111.    In furtherance of this conspiracy Defendant Officers committed overt acts and otherwise demonstrated willful participation in a joint, unlawful activity.

112.    As a direct and proximate result of the illicit prior agreement referenced above, Plaintiffs' rights were violated, and they suffered financial damages, as well as severe emotional distress and anguish, as is more fully alleged above.

113.    The misconduct described above was taken with malice, willfulness and/or the reckless disregard for the rights of Plaintiffs.

### COUNT VI
### Malicious Prosecution under State and Federal Law
### (Mr. Mann Against Defendant Officers and Ms. Wade Against Defendant Officer Group 1)

114.    Plaintiffs re-allege and incorporate all preceding paragraphs as if fully re-stated

herein.

115.     Defendant Officer Group 1 accused Plaintiffs of engaging in the criminal acts described herein knowing that those accusations were false and without genuine probable cause.

116.     Defendant Officer Group 2 accused Mr. Mann of engaging in the criminal acts described herein knowing that those accusations were false and without genuine probable cause.

117.     Defendant Officer Group 1 prepared reports and made statements to trial prosecutors with the intent and effect of exerting influence on the decision to prosecute and causing the commencement and continuation of criminal proceedings against Plaintiffs in relation to their arrests from March of 2017.

118.     Defendant Officer Group 2 prepared reports and made statements to trial prosecutors with the intent and effect of exerting influence on the decision to prosecute and causing the commencement and continuation of criminal proceedings against Mr. Mann in relation to his July 30, 2017 arrest.

119.     Defendant Officers actions were done intentionally, with malice, willfulness, and recklessness disregard to the rights of others.

120.     The criminal proceedings described above were terminated in Plaintiffs' favor and in a manner indicative of their innocence when they were acquitted of all charges in connection with the March 2017 arrests and the charges against Mr. Mann were dismissed in relation to the July 30, 2017 arrest.

121.     As a direct and proximate result of this misconduct, Plaintiffs sustained, and continue to sustain, injuries as set forth above, including loss of liberty, financial damages, and

emotional pain and suffering.

## COUNT VII
### Intentional Infliction of Emotional Distress
### (Mr. Mann Against Defendant Officers and Ms. Wade Against Defendant Officer Group 1)

122.     Plaintiffs re-allege and incorporate all preceding paragraphs as if fully restated herein.

123.     The acts and conduct of Defendant Officer Group 1 toward Plaintiffs and the acts and conduct of Defendant Officers toward Mr. Mann described herein were extreme and outrageous. Defendant Officers' conduct was rooted in an abuse of power or authority, and they were undertaken with maliciousness and intent to cause, or were recklessly indifferent to the great probability that their conduct would cause severe emotional distress to Plaintiffs.

124.     As a direct and proximate result of the conduct of Defendant Officers, Plaintiffs suffered and continue to suffer severe emotional distress.

## COUNT VIII
### Municipal Policy Claim
### (All Plaintiffs Against Defendant City of Urbana)

125.     Plaintiffs restate and reallege all preceding paragraphs as though fully restated herein.

126.     Defendant City of Urbana ("City) is responsible for the creation and adoption of rules and regulations for the governance of the City of Urbana and for the Urbana Police Department.

127.     Defendant City retains policy makers that train and supervise its police officers about proper arrests, proper investigations and interactions with the public.

128.     The unconstitutional actions of Defendant Officers that were taken against

Plaintiffs, as alleged above, were done pursuant to the policy and practice of the City of Urbana of failing to adequately and meaningfully train, supervise, or discipline its police officers.

129.    Furthermore, these unlawful actions against Plaintiffs were taken pursuant to a pattern and practice by the City of Urbana and its police officers to charge members of the public with false resisting/obstructing charges in order to cover up their misconduct in arresting people without probable cause.

130.    It is commonplace within the City of Urbana for its police officers to arrest members of the public without probable cause and then to falsely charge those individuals with no other crime besides a trumped up charge of obstruction/resisting.

131.    For example, on March 19, 2017, Urbana Police Officers, arrested a Ms. Wade based on false charges of resisting/obstructing. There was no probable cause for Wade's arrest so Urbana police officers fabricated a resisting/obstructing charge and arrested her for that. Wade was ultimately acquitted of the charges.

132.    Mr. Mann's July 2017 arrest described above is another example of the City's unlawful policy and practice.

133.    In yet another example, Urbana police officers falsely charged a man named Andre Hubbard in 2017 with resisting/obstructing charges even though their own police dash camera belied those charges.

134.    This illegal pattern and practice also goes on at Urbana's sister agency, the Champaign Police Department, where these departments use charges of resisting or obstructing a peace officer as a basis to arrest individuals without probable cause to cover up their illegal actions in the course of making an arrest. Ready examples of this illegal pattern and practice can be observed from the facts determined in the lawsuits styled *Benjamin Mann v. City of*

*Champaign*, 14 C 2200; *Kisica Seets v. Officer Matt Rush*, 15 C 2154; and *Precious Jackson v. City of Champaign*, 16 C 2046.

135.    The illegal pattern and practice described above amounts to deliberate indifference on the part of the City of Urbana and on the part of its leading officials and policymakers.

136.    At all times relevant to this complaint, Defendant City was acting under color of law and pursuant to the unconstitutional policies set forth by the City of Urbana.

<u>**COUNT IX**</u>
**Respondeat Superior**
**(All Plaintiffs Against Defendant City of Urbana and Mr. Mann Against The Board of Trustees of the University of Illinois)**

137.    Plaintiffs re-allege and incorporate all preceding paragraphs above as if fully restated herein.

138.    Defendant Officers, with the exception of Defendant Elston, were, at all times relevant to this complaint, employees of Defendant City of Urbana.

139.    Defendant Elston was, at all relevant times to this complaint an employee of Defendant University.

140.    Defendant Officers were acting within the scope of their employment and their actions are imputed to the Defendant City of Urbana (with the exception of Defendabnt Elston) under state law pursuant to *respondeat superior*.

141.    Defendant Elston was actin within the scope of his employment at all relevant ties and his actions are imputed to Defendant University under state law pursuant to *respondeat superior*.

## COUNT X
### Statutory Indemnification
### (All Plaintiffs Against Defendant City of Urbana and Mr. Mann Against The Board of Trustees of the University of Illinois)

142.    Plaintiffs reallege and incorporate all preceding paragraphs above as if fully restated herein.

143.    Plaintiffs seeks statutory indemnification under Illinois law against the City of Urbana because the Defendant Officers (with the exception of Defendant Elston) were engaged in the performance of their duties on behalf of the City of Urbana and its police department when Plaintiffs were injured.

144.    Mr. Mann seeks statutory indemnification under Illinois law against Defendant University because Defendant Elston was engaged in the performance of his duties on behalf of the University and the University of Illinois Police Department when Mr. Mann was injured as a result of the July 30, 2017 incident.

145.    Illinois law provides that public entities are directed to pay any tort judgment for which their employees are liable within the scope of their employment activities.

146.    The Defendant Officers (with the exception of Defendant Elston) are or were employees of the City of Urbana Police Department who acted within the scope of their employment in committing the misconduct described herein.

147.    Defendant Elston is or was an employee of the University and/or the University of Illinois Police Department who acted within the scope of his employment in committing the misconduct described herein.

WHEREFORE, Plaintiffs respectfully request that judgment be entered in their favor and against Defendant Officers, the City of Urbana, and the Board of Trustees of the University of Illinois, and that they be granted compensatory damages, and where applicable, punitive

damages, as well as an award of costs and attorneys' fees, and such other relief this court deems equitable and just.

## JURY DEMAND

Plaintiffs hereby request a trial by a jury pursuant to Fed. R. Civ. P. 38(b) for all issues so triable.

Dated: December 5, 2017

<div style="margin-left:40%">

Respectfully submitted,

/s/ Shneur Z. Nathan, Att. No. 6294495
Shneur Z. Nathan
Nathan & Kamionski LLP
140 S. Dearborn, Suite 1510
Chicago, Illinois 60603
(312) 612-1955
snathan@nklawllp.com

</div>