E-FILED
Friday, 03 January, 2020  07:10:48 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### Urbana Division

| | |
|---|---|
| BENJAMIN MANN, | |
| Plaintiff, | |
| v. | Case No. 17-2300 |
| CITY OF URBANA POLICE OFFICERS JENNIFER DIFANIS, COLBY G. WRIGHT, SARA M. LINKS, SETH R. KING, JAY LOSCHEN, CHAD BURNETT, DON C. MCCLELLAN, ADAM MARCOTTE, JOHN FRANQUEMONT, SGT. ZACH MAKALIK, AND AS YET UNKNOWN OFFICERS, THE CITY OF URBANA, A MUNICIPAL CORPORATION, AND UNIVERSITY OF ILLINOIS POLICE OFFICER CHRIS ELSTON. | |
| Defendants. | |

### ORDER

This matter is before the Court on the Motion for Summary Judgment (#80) filed by the City of Urbana and Urbana Police Officers Difanis, Wright, Links, King, Loschen, Burnett, McClellan, Marcotte, Franquemont, Makalik, and University of Illinois Police Officer Elston ("Officers"). Plaintiff Benjamin Mann ("Mann") filed a Response Brief in Opposition to the Motion for Summary Judgment (#98). In turn, the Officers filed a Reply Brief (#115). For the reasons discussed below, the Officers' Motion for Summary Judgment (#80) is GRANTED.

## I.    Introduction

Mann's lawsuit arises from two incidents during which Mann was arrested by the Officers.[1] First, on March 19, 2017, Mann was arrested following an altercation in which he intentionally drove his car into another person's vehicle ("First Arrest"). Second, on July 30, 2017, Mann was arrested after police responded to a reported domestic violence incident at Mann's apartment ("Second Arrest"). Mann is suing the Officers and the City of Urbana for alleged violations of Illinois state law and 42 U.S.C. § 1983. Specifically, Mann alleges First Amendment Retaliation, Excessive Force, False Arrest, Conspiracy, Malicious Prosecution, Intentional Infliction of Emotional Distress, and Illegal Search. Additionally, Mann seeks recovery from the City of Urbana under *Respondeat Superior* and Statutory Indemnification.

Defendants move for summary judgment on all counts, arguing that the material facts are undisputed, probable cause existed to arrest Mann, the force used was not excessive, no evidence was fabricated, and the apartment search was legal.

## II.    Material Facts

Because much of this case is determined by whether the Officers had probable cause to arrest Mann, the Court assesses the totality of the information available to the Officers at the time they determined whether probable cause existed on both occasions. As a result, this section will include different versions of the events that occurred during the First Arrest and Second Arrest. Where there is a dispute between Mann's version of events and the Officers' version, the Court will construe the evidence in the light most favorable to the non-moving party. *See Lovett v. Herbert*, 907 F.3d 986, 990 (7th Cir. 2018).

### A.    The Matt Rush Lawsuit & Settlement

On August 25, 2014, Mann filed a police-misconduct lawsuit against City of Champaign Police Officer Matt Rush (Mann's Responsive Brief, #98 p. 8). On January 4, 2016, the City of Champaign settled the lawsuit with Mann for $250,000, and the City settled two other lawsuits against Matt Rush for excessive force. (Amended Complaint,

---

[1] Some Defendant-Officers were involved in both arrests, and some Defendant-Officers were involved in a single arrest.

#42, p. 3). Officer Matt Rush's employment with the City was later terminated. This lawsuit is material because it forms the basis of Mann's First Amendment Retaliation claim.

### B.  The First Arrest – The Car-Collision Incident

On March 19, 2017, police received a dispatch alerting them to an urgent incident at 810 Oakland Avenue in Urbana, Illinois ("Mann's apartment complex").[2] Defendant-Officers Difanis and King responded to the call, and dispatch warned them that an individual may have a gun at the scene and that a black car may be involved in the incident. (Officers' Motion for Summary Judgment, #80 p. 10); (Mann's Responsive Br., #98, p. 18); (Ex. 2, Dep. of Officer King, p. 31-32). Defendant-Officers Wright, Loschen, and Burnett also responded to the call.

Once Officers Difanis and King arrived, they saw Mann arguing with a female, Samantha Wade ("Wade") near a black car.[3] (Officers' Motion for Summary Judgment #80, p. 11).  Officer Difanis approached Mann and Wade and told both individuals to put their hands in the air. Mann yelled that Officer Difanis was "letting [the attackers] go."

### i.  Officer Difanis Speaks with Ms. Koryasia Pierce

After backup arrived, Officer Difanis was flagged down by an individual she would later learn was named Koryasia Pierce ("Ms. Pierce"). (Mann's Responsive Br., #98 p. 11). Ms. Pierce was near the apartment building's dumpsters, and Ms. Pierce could not be seen by Mann and Wade. Officer Difanis noticed Ms. Pierce was crying (Mann's Responsive Br., #98 p. 11); (Ex. 14, Dep. of J. Difanis, p. 98 Line 7).

Ms. Pierce told Officer Difanis she was in an altercation with Mann. Specifically, Ms. Pierce told Officer Difanis that she was trying to back out of her parking spot when a car drove behind her at a high rate of speed and almost hit her car. (Defendants' Motion for Summary Judgment, #80, p. 80); (Ex. 14, Dep. of J. Difanis, p. 98-99). Next, the car parked near Ms. Pierce, and Ms. Pierce exited her vehicle to yell at the driver, who turned

---

[2] At the time of the incident, Mann was living at the apartment, but Wade's name was on the lease.
[3] Later, Wade would attempt to enter this black car. (Officers' Motion for Summary Judgment, #80 p. 12); (Mann's Responsive Motion #98, p. 10).

out to be Mann. (Ex. 14, Dep. of J. Difanis, p. 99, Line 1–13). Mann exited his vehicle, yelled back at Ms. Pierce, and Mann entered the apartment complex with a female and a child.[4] (Ex. 14, Dep. of J. Difanis, p. 99, Line 18–20).

Ms. Pierce told Officer Difanis that she then parked her car behind and perpendicular to Mann's car so she could write down his license plate and inform the police. (Ex. 14, Dep. of J. Difanis, p. 99, Line 20–22). At this time, Mann returned from the apartment building, and reengaged Pierce, who was still in her car, in another verbal confrontation. (Ex. 14, Dep. of J. Difanis, p. 99, Line 22–24). Next, Mann got into his car, drove in reverse, and collided with Ms. Pierce's car. (Officers' Motion for Summary Judgment #80, p. 15); (Mann Responsive Br. #98, p. 20-21). After this collision occurred, Ms. Pierce exited her vehicle. Lastly, Ms. Pierce told police that Mann punched her in the face twice and that no one else was involved in the altercation. (Ex. 14, Dep. of J. Difanis, p. 106, Line 1–13).[5]

After speaking with Ms. Pierce, Officer Difanis examined Ms. Pierce's car for damage and took photographs of Ms. Pierce's face. (Ex. 14, Dep. of J. Difanis, p. 106–107). Officer Difanis noticed damage to Ms. Pierce's car, which included a wide indentation in the side panel. (Mann's Respnsive Br. #98, p. 20); (Officers' Motion for Summary Judgment #80, p. 15). Officer Difanis also noticed a slight swelling on Ms. Pierce's left cheekbone, and an injury to Pierce's neck. Specifically, it appeared as if Ms. Pierce's earing had punctured the side of her neck.[6] (Officers' Motion for Summary Judgment

---

[4] Mann and Wade's apartment was approximately 100 feet from where this incident occurred. (Ex. 1, Dep. of B. Mann, p. 46).

[5] Mann disputed this fact by arguing: "Mann did not punch Pierce." (Mann's Responsive Br. #98, p. 19-20). Mann's response violated Local Rule 7.1(D)(2)(b) because Mann did not respond to the Officers' asserted Material Fact. In other words, Mann did not respond to the assertion that *Ms. Pierce told Officer Difanis* that Mann punched her in the face. The Court further analyzes this matter in Section (III)(A)(1) of this Order.

[6] Mann disputed this fact by arguing: "there is a question of material fact as to the credibility of Pierce's claims that Mann punched her in the face or head." (Mann's Response to Motion for Summary Judgment, #98, p. 20). Mann's response violated Local Rule 7.1(D)(2)(b) because Mann did not respond to the Officers' asserted Material Fact. In other words, Mann did not respond to the assertion that *Officer Difanis noticed* swelling on Ms. Pierce's left cheekbone and a puncture mark on the side of her neck. The Court further analyzes this matter in Section (III)(A)(2) of this Order.

#80, p. 15); (Mann Responsive Br. #98, p. 20); (Photograph of Ms. Pierce, Ex. 15, Bates Stamp p. 000091). Additionally, Pierce told Officer Difanis she was recently confined to a wheelchair, and Officer Difanis observed Ms. Pierce walked with a "twisting" motion. (Officers' Motion for Summary Judgment #80, p. 15).[7]

Ms. Pierce omitted key facts about the Car-Collision Incident when Officer Difanis interviewed her. Officer Links interviewed Mann and Wade's neighbor, Tim Seaton, *after* Mann had been arrested. According to Seaton, Ms. Pierce cursed and threatened Mann and Wade during their verbal altercation. (Ex. 20, Dep. of Tim Seaton 22-23, p. 25). Second, Ms. Pierce called two or three male associates on the phone, and asked the male associates to come to the apartment complex and assault Mann and Wade. (Ex. 20, Dep. of Tim Seaton p. 25). Third, the male associates came to the apartment complex and assaulted Wade and Mann. (Ex. 20, Dep. of Tim Seaton p. 27). Fourth, the male associates fled on foot before police arrived. (Ex. 20, Dep. of Tim Seaton p. 27). At the time of the First Arrest, the Officers were not aware of these facts.

### ii.  Officer Lochen Speaks with Benjamin Mann

Officer Lochen interviewed Mann at the scene of the Car-Collision Incident. (Mann's Responsive Br., #98 p. 11). Mann told Officer Lochen he was attacked by an individual with dark hair and a gun. (Mann's Responsive Br. #98, p. 11). When Officer Lochen asked Mann about the damage to his car, including the damaged rear bumper, Mann denied that he hit Pierce's car and stated the damage to his car was old.[8] (Officers' Motion for Summary Judgment #80, p. 16); (Mann's Responsive Br. #98, p. 11); (Ex. 4, Dep. of J. Loschen, p. 43). During Mann's deposition, he did not dispute Officer Loschen's version of their conversation. (Mann's Responsive Br., #98 p. 11). Officer Loschen did not

---

[7] Mann disputed this fact by arguing: "there is a question of material fact as to whether Pierce had a physical disability." Mann's response violated Rule 7.1(D)(2)(b)(6) because Mann did not offer a relevant response to the Officers' assertion that Ms. Pierce walks with a "twisting" motion. Additionally, Mann's response violated Rule 7.1(D)(2)(b)(2) because he did not provide any citation to support his response. For these reasons, the Officers' asserted fact is admitted. The Court further analyzes this matter in Section (III)(A)(4) of this Order.

[8] In Mann's deposition, Mann admitted he hit Ms. Pierce's car with his car, and Mann admitted the damage Officer Loschen documented was from this impact. (Ex. 1, Dep. of B. Mann, p. 47–48, p. 54–55).

see any injuries on Mann. (Officers' Motion for Summary Judgment, #80, p. 16-17); (Mann's Responsive Motion #98, p. 11-12).

The record does not indicate that Mann provided the Officers with any other information regarding the Car-Collision incident. (Mann's Responsive Br. #98, p. 27-29); (Mann's Responsive Br. #98, p. 11). Additionally, Officer Loschen testified that he did not remember Mann mentioning Ms. Pierce's name during the interview for the Car-Collision Incident. (Ex. 4, Officer Loschen Dep., p. 45). After speaking with Mann, Officer Loschen confirmed that Mann did not have a gun and then permitted Mann to return to his apartment. (Ex. 4, Dep. of J. Loschen, p. 43).

### iii.  Officer King Speaks with Samantha Wade

Officer King interviewed Wade because she appeared to be the female that was arguing with Mann when law enforcement arrived on the scene. According to Wade, she was dating Mann at the time of the incident, and the two lived together at the apartment. (Ex. 14, Dep. of J. Difanis, p. 137–138, p. 153, p. 165–166).   Wade stated that before the police arrived, there were two males and one female at the scene. (Ex. 2, Dep. of S. King, 40:10–21); (Officers' Motion for Summary Judgment, #80, p. 80). Wade told police she was struck in the face by an individual wearing a mask. (Officers' Motion for Summary Judgment, #80, p. 80). Officer King checked Wade for injuries, but he did not see any. (Officers' Motion for Summary Judgment #80, p. 17); (Mann's Responsive Br. #98, p. 12).

### iv.  The Officers Compare Findings and Arrest Mann

Outside of Mann's, Wade's, and Pierce's presence, the Officers concluded that Mann was the aggressor based on their interviews and other information available to them at the time. The Officers' conclusion that Mann was the aggressor was based on four pieces of evidence. First, contact appeared to have been made between Ms. Pierce's and Mann's vehicles, including damage to Pierce's side panel and Mann's rear bumper.[9] This physical evidence supported Ms. Pierce's version of the story and contradicted

---

[9] It was reasonable for the Officers to conclude that the damage to Ms. Pierce's car was caused by Mann's car. Indeed, during Mann's deposition, he stated that it was "obvious" the damage to his car looked like it came from impacting Ms. Pierce's car. (Ex. 1, Dep. of B. Mann, p. 53–56).

Mann's version of the story. Second, Ms. Pierce had injuries to her face that were consistent with her story that she was struck in the face. Neither Wade nor Mann had any apparent physical injuries. (Ex. 2, Dep. of S. King, p. 59). Third, Ms. Pierce's balance seemed to be impaired due to a previous medical condition, and it did not appear that she was physically capable of launching an attack on Mann. (Ex. 14, Dep. of J. Difanis, p. 116-17). Fourth, the Officers spoke with people that were leaving the scene in a car, and the Officers determined these people were not involved in the incident.[10] (Officers' Motion for Summary Judgment; #80 p. 13); (Mann's Responsive Br., #98 p. 10). Based on this information, the Officers decided that Mann should be arrested for battery and reckless driving.

### v.  The Officers Enter Mann's Apartment and Arrest Him.

One of the Officers knocked on the apartment door, and Wade consented to the Officers entering the apartment. (Mann's Responsive Br. #98, p. 12, par. 76) Mann included this fact in the "Undisputed Material Fact Section" of his brief. At the time the Officers entered, Mann had his back to the Officers. (Mann's Responsive Br. #98, p. 12). Next, Mann reached for the pocket of his pants.[11] (Mann's Responsive Br. #98, p. 13, p. 22, p. 40, p. 51). Officer King believed Mann could be reaching for a weapon in his pocket or waistband, and he initiated a takedown maneuver.[12] (Ex. 2, Dep. of S. King, p. 56, p. 84-85).

Officer King grabbed Mann's right arm and pulled him to the ground. (Officers' Motion for Summary Judgment #80, p. 48). More specifically, Officer King grabbed Mann's right arm with both of his hands and pushed Mann forward with the right side

---

[10] The Officers stopped a tan Buick that was leaving the scene, but the people in this vehicle did not know about the incident, and they did not have any weapons on them.

[11] Mann admitted to the Officers on video that he reached for his pocket as they were about to arrest him, but explained that he was putting something in his pants pocket. (Mann's Responsive Brief, #98 p. 22, par. 80).

[12] Mann disputed this fact by arguing: "Mann did not reach for a weapon while he was being arrested." (Mann's Responsive Br., #98, p. 22). Mann's response violated Rule 7.1(D)(2)(b) because Mann did not offer a relevant response to the Officers' assertion that *Officer King believed* Mann could be reaching for a weapon in his pocket. For this reason, the Officers' asserted fact is admitted. The Court further analyze this matter in Section (III)(A)(3) of this Order.

of King's body. (Mann's Responsive Br. #98, p. 22); (Officers' Motion for Summary Judgment, #80, p. 20). This action caused Mann to trip and fall on his chest. Officer King landed on Mann during this takedown. (Mann's Responsive Br. #98, p. 31) (stating the Officers grabbed, tripped, and slammed Mann). Next, Officer King placed his knee on Mann's lower back, and Mann was placed in handcuffs. (Mann's Responsive Br. #98, p. 31). Mann twisted his ankle during this takedown. (Mann's Responsive Br. #98, p. 31).

On the way to the police station, Mann told Officer King that when reaching for his pocket, he was trying to put his fake tooth in his pocket, not resisting arrest.[13] (Ex. 24, Squad Car Video, March 19, 2017, 20:10:33 - 20:10:55); (Ex. 2, Dep. of S. King, p. 86-88). In Mann's Responsive Brief, Mann acknowledges that he reached into his pocket as the Officers approached to arrest him. (Mann's Responsive Br., #98 p. 13 p. 40, p. 51, p.61, p. 63). Mann was charged for this incident, and later acquitted by a jury at trial.

### vi.   The Officers Interview Tim Seaton After Mann is Arrested

Tim Seaton lives in the same apartment building as Wade and Mann. In fact, Seaton's apartment is right below Wade and Mann's apartment, which is particularly relevant to the Second Arrest.

On the day of the Car-Collision Incident Mr. Seaton looked out his window because a woman had been cussing for an extended period of time. (Ex. 20, Tim Seaton Dep., p. 22). Mr. Seaton observed Ms. Pierce cursing at Wade and Mann, and the couple was also cursing at Ms. Pierce. (Ex. 20, Tim Seaton Dep., p. 23, p. 25). Mr. Seaton did not see any physical altercation between Wade, Mann, or Ms. Pierce. (Ex. 20, Tim Seaton Dep., p. 26). Mr. Seaton heard Ms. Pierce calling her friends on her cellphone to attack Wade and Mann. (Ex. 20, Tim Seaton Dep., p. 25). At this point, Mr. Seaton observed Mann apparently calling 911. (Ex. 20, Tim Seaton Dep., p. 25-26).

---

[13] Specifically, from the back of the police car, Mann told Officer King: "I wasn't resisting you man. Ya hear me. That's from a human to a human man to man. I wasn't resisting you man. I had a f**king fake tooth in my hand and I just dropped in my pocket which when we go in there you'll see I'm not lying to you. Ok? I was not resisting you." (Squad Car Video, March 19, 2017, 20:10:33 - 20:10:55). However, during Mann's deposition, he denied he reached toward the left side of his waistband or pocket area. (Ex. 1, Dep. of B. Mann, p. 102, L. 22-25).

Next, according to Seaton, three male individuals arrived and started fighting and punching Mann and Wade. (Ex. 20, Tim Seaton Dep., p. 27). After two minutes of fighting, Mr. Seaton stated the female fled the scene in a car going southbound, and the three male assailants fled on foot. (Ex. 20, Tim Seaton Dep., p. 27). Next, according to Mr. Seaton, three police officers arrived on the scene. (Ex. 20, Tim Seaton Depo., p. 29). Critically, Mr. Seaton stated he was not interviewed by police until after Mann and Wade were arrested and taken away. (Ex. 20, Tim Seaton Dep., p. 33).

### C.  The Second Arrest – The Domestic Incident

On the night of July 30, 2017, Officer Franquemont heard over dispatch that a potential domestic incident occurred at Mann's Apartment Complex. (Ex. 12, Dep. of J. Franquemont, p. 33–34). The person that reported the incident, Tim Seaton, gave dispatch his address, and told dispatch he heard yelling, crying, and the sound of someone hitting the floor in the apartment above him. (Ex. 12, Dep. of J. Franquemont, p. 34).

### i.        The Officers Arrive on the Scene

Upon arriving at the scene, Officer Franquemont noticed that the only light illuminated in the apartment complex was coming from Mann's apartment. Officers Franquemont, Marcotte, and McClellan went to the apartment that was directly above Tim Seaton's apartment (i.e. Mann's Apartment). (Ex. 12, Dep. of J. Franquemont, p. 34). Mann opened his apartment door a few inches and asked the Officers why they were there. (Ex. 12, Dep. of J. Franquemont, p. 37-38).[14] Officer Franquemont explained to Mann that the officers were responding to a report of a domestic incident, and they just needed to make sure everybody was okay. (Ex. 12, Dep. of J. Franquemont, p. 38–39). Mann refused to allow the Officers to enter the apartment. (Mann's Responsive Br. #98, p. 33); (Ex. 12, Dep. of J. Franquemont, p. 38). Officer Franquemont began to explain why the Officers needed to enter the apartment. (Ex. 12, Dep. of J. Franquemont, p. 39). In response, Mann closed the apartment door on Officer Franquemont's foot and Officer

---

[14] Officer Franquemont recognized Mann from recently testifying in a criminal prosecution against Mann. (Ex. 12, Dep. of J. Franquemont, p. 33).

McCellan's foot. (Ex. 12, Dep. of J. Franquemont, p. 42-43); (Mann's Responsive Br. #98, p. 24); (Officers' Motion for Summary Judgment, #80, p. 24).

### ii.   Officers Difanis and Mikalik Arrive on the Scene and Officer Difanis is Informed of Mann's Identity.

Less than ten minutes after the first group of Officers arrived on the scene, Officer Difanis and Mikalik arrived on the scene. Officer Franquemont informed Mikalik and Difanis that he recognized the individual in the apartment as Benjamin Mann. (Ex. 12, Dep. of J. Franquemont, p. 52-53), (Mann's Responsive Br. #98, p. 15).

### iii.   Officer Difanis Speaks with the 911 Caller, Tim Seaton.

Officer Difanis interviewed the 911 caller, Tim Seaton. (Ex. 14, Dep. of J. Difanis, p. 141); (Officers' Motion for Summary Judgment #80, p. 25). Mr. Seaton told Officer Difanis that he was awoken by the sound of a male and female yelling in the apartment above his apartment. (Ex. 14, Dep. of J. Difanis, p. 141); (Ex. 20, Dep. of T. Seaton, p. 36, p. 42–43). This yelling was accompanied by loud booms and banging sounds.[15] (Ex. 14, Dep. of J. Difanis, p. 141); (Ex. 20, Dep. of T. Seaton, p. 36, p. 42–43); (Mann's Responsive Br. #98, p. 23-24); (Officers' Motion for Summary Judgment, #80, p. 25). At one point, Mr. Seaton also heard what sounded like a moaning, crying, or whimpering from a female.[16] (Ex. 14, Dep. of J. Difanis, p. 141); (Ex. 20, Dep. of T. Seaton,  p. 41–43); (Mann's Responsive Br. #98, p. 24-25); (Officers' Motion for Summary Judgment, #80, p. 25). Mr. Seaton also told Difanis that these noises concerned him enough to call 911. (Ex. 14, Dep.

---

[15] Mann categorizes this fact as "Disputed" in his Response, but he does not explain why he disputes this fact. (Mann's Responsive Br. #98, p. 23-24). In other words, Mann did not respond to the assertion that Mr. Seaton told officers that he heard yelling, loud booms, and loud bangs coming from Mann's apartment. (Mann's Responsive Br. #98, p. 23-24). Mann's response violated Local Rule 7.1(D)(2)(b) because Mann did not respond to the Officers' asserted Material Fact. For this reason, the fact is admitted.

[16] Mann categorizes this fact as "Disputed" in his Response, but he again does not explain why he disputes this fact. (Mann's Responsive Br. #98, p. 23-24). In other words, Mann did not respond to the assertion that Mr. Seaton told officers that he heard moaning, crying, or whimpering from a female coming from Mann's apartment. (Mann's Responsive Br. #98, p. 23-24). Mann's response violated Local Rule 7.1(D)(2)(b) because Mann did not respond to the Officers' asserted Material Fact. For this reason, the fact is admitted.

of J. Difanis, p. 141-42); (Mann's Responsive Br. #98, p. 14) (stating this is an undisputed material fact).[17]

### iv.    Officer Difanis Discovers a Warrant for Mann's Arrest.

After speaking with Mr. Seaton, Officer Difanis exited the apartment complex and returned to her squad car. Officer Difanis ran Mann's information through the Law Enforcement Database System ("LEADS"). (Ex. 14, Dep. of J. Difanis, p. 143–144). Officer Difanis's LEADS search showed that there was a warrant for Mann's arrest out of DeKalb County.[18]

Officer Difanis asked dispatch to confirm the warrant was active, and Officer Difanis asked for the address that was listed on the warrant. (Ex. 14, Dep. of J. Difanis, p. 147). Dispatch confirmed the warrant's existence, and Dispatch stated the address on the warrant was "810 Oakland Avenue" in Urbana, IL.[19] (Ex. 14, Dep. of J. Difanis, p. 148). Next, Officer Difanis confirmed with a superior officer that the warrant was sufficient to force entry. (Ex. 14, Dep. of J. Difanis, p. 148–149).

### v.    The Officers Forcibly Enter Mann's Apartment.

Officers Difanis and Mikalik forcibly entered Mann's apartment, using a small battering ram. According to the Officers, they used the battering ram because they believed they saw a chain-lock on the apartment door during the initial encounter. (Ex. 12, Dep. of J. Franquemont, p. 54). Officer Franquemont placed handcuffs on Mann (with assistance from Officer Marcotte) without incident, and removed Mann from the apartment. (Ex. 12, Dep. of J. Franquemont, p. 58).

---

[17] Seaton's roommate, Ryan Henry, was home the night of the Second Arrest. Mr. Henry stated that he did not hear anything coming from Mann's apartment because he was asleep. (Mann's Responsive Br. #98, p. 32).

[18] The search also listed identifying information (name, height, and weight) of Mann. In his deposition, Mann agreed there was a warrant for his arrest, and that the identifying descriptions of him on the warrant were accurate. (Ex. 1, Dep. of B. Mann, p. 32-33).

[19] The dispatcher incorrectly stated that the warrant listed 810 Oakland Avenue as Mann's address. The warrant actually listed 807 S. Urbana Avenue as Mann's address. Mann did live at 807 S. Urbana Avenue, but had recently moved in with his girlfriend at 810 Oakland Avenue.

### III.    Material Factual Disputes

### A.  Mann's Brief Violated Local Rule 7.1(D)(2)(b)(2) and (b)(6)

Several subsections of Mann's brief violated Local Rule 7.1(D)(2)(b)(2) and (b)(6). Specifically, some of Mann's responses did not address the corresponding Undisputed Fact Section of the Officers' Motion for Summary Judgment and some of Mann's responses did not have evidentiary support.

Local Rule 7.1(D)(2)(b)(2) states that a Response to a Motion for Summary Judgment must contain a Disputed Material Fact subsection and that:

> Each claim of disputed fact must be supported by evidentiary documentation referenced by specific page. Include as exhibits all cited documentary evidence not already submitted by the movant.

Local Rule 7.1(D)(2)(b)(2); *Yanick v. Hanna Steel Corp.*, 653 F.3d 532 (7th Cir. 2011). Additionally, the Local Rules state: "A failure to respond to any numbered fact will be deemed an admission of the fact." Local Rule 7.1(D)(2)(b)(6). In other words, under Local Rule 7.1(D)(2)(b)(6), "the failure to *properly respond* to a numbered fact in an opponent's statement of facts will be deemed an admission of the fact." *McCurry v. Kenco Logistics Services*, LLC, 942 F.3d 783, 787 (7th Cir. 2019) (emphasis added). The Seventh Circuit reviews "a district court's enforcement of its local rules for an abuse of discretion. *Frakes v. Peoria School District No. 150*, 872 F.3d 545, 549 (7th Cir. 2017).

### 1.  Mann Failed to Respond to the Asserted Fact that Ms. Pierce <u>Told</u> Officer Difanis that Mann Punched her in the Face.

Here, in the Officers' Undisputed Material Fact Section of their Motion for Summary Judgment, the Officers stated:

> 51. Ms. Pierce told Difanis: . . . . At some point while Ms. Pierce and [Mann] were both outside their vehicles, [Mann] punched Ms. Pierce twice in the face. (Ex. 14, Dep. of J. Difanis, 106:1–16).

(Officers' Motion for Summary Judgment #80, p. 14-15). In the Disputed Material Fact Section in Mann's responsive brief, Mann stated:

> **RESPONSE:** Undisputed as to citation, disputed because these statements are neither a full nor accurate recitation of the facts most favorable to the nonmoving party. . . . While Mann was on the phone with police, Pierce ran up in his face screaming and yelling. (Mann. 59:17-60:15). Mann pushed her away from him. (Ex. 1, Dep. of B. Mann, 59:17-60:15; 62:12-14; 62:15-20). Mann did not punch Pierce. (Ex. 1, Dep. of B. Mann, 62:12-14).

(Mann's Response to Motion For Summary Judgment #98, p. 19-20). Mann's response violated Rule 7.1(D)(2)(b) because Mann did not respond to the Officers' asserted Material Fact. Specifically, the fact provides that *Ms. Pierce told Officer Difanis* that Mann punched her in the face. Mann only challenges the veracity of the statement, not that the statement was made. Therefore, the Court concludes that the Officers' asserted fact is admitted.

### 2. Mann Failed to Provide a Relevant Response to the Asserted Fact that Officer Difanis Noticed Swelling on Ms. Pierce's Face, and Mann Failed to Provide Evidentiary Documentation for his Response.

Here, the Officers' Motion for Summary Judgment stated:

> 53. Difanis noticed slight swelling on Ms. Pierce's left cheekbone and left ear, and a spot where it appeared Ms. Pierce's earing had punctured the side of her neck. (Ex. 14, Dep. of J. Difanis, 108:21–109:7).

(Officers' Motion for Summary Judgment, #98 p. 20). In the Disputed Material Fact Section in Mann's responsive brief, Mann stated:

> **RESPONSE:** Undisputed as to the citation, disputed because there is a question of material fact as to the credibility of Pierce's claims that Mann punched her in the face or head.

(Mann's Responsive Br., #98, p. 20). Mann's response again violates Rule 7.1(D)(2)(b) because Mann did not respond to the Officers' asserted Material Fact. The Officers' asserted material fact relies on Officer Difanis's observation of injuries on Ms. Pierce's face. Mann's response addresses a completely different fact, which is whether Mann actually hit Pierce. Therefore, Mann's response violated Local Rule 7.1(D)(2)(b)(6) because he did not respond to the Officers' asserted fact. Separately, Mann's response

violated Local Rule 7.1(D)(2)(b)(2) because he did not provide any documentation to support his response. For these reasons, the Court concludes that the Officers' asserted fact is admitted.

### 3. Mann Failed to Respond to the Asserted Fact that Officer King Believed Mann was Reaching for a Weapon in his Pocket During the First Arrest.

Here, in the Officers' Undisputed Material Fact Section of their Motion for Summary Judgment, the Officers stated:

> 81. King believed [Mann] was possibly reaching for a weapon in his waistband/pocket. (Ex. 2, Dep. of S. King, 55–56, 84:12–85:2).

(Mann's Responsive Br. #80, p. 20). In Mann's Responsive Brief, Mann placed this fact in the Disputed Material Fact subsection of his brief and stated:

> **RESPONSE:** Disputed. Mann did not reach for a weapon while he was being arrested. (Ex. 1, Dep. of B. Mann, 212:13–17).

(Mann's Response to Motion for Summary Judgment, #98, p. 22). Mann's response violated Rule 7.1(D)(2)(b) because Mann did not offer a relevant response to the Officers' assertion that *Officer King believed* Mann could be reaching for a weapon in his pocket. For this reason, the Officers' asserted fact is admitted.

### 4. Mann Failed to Provide Evidentiary Documentation to Support his Assertion that Ms. Pierce did not Walk with a "Twisting" Motion.

Here, in the Officers' Undisputed Material Fact Section of their Motion for Summary Judgment, the Officers stated:

> 54. Difanis also observed that Ms. Pierce walked with a "twisting motion" around her pelvis and hips, (Ex. 14, Dep. of J. Difanis, 116:18–19, 117:19–22).

(Mann's Motion for Summary Judgment #80, p. 20). In Mann's Responsive Brief, Mann places this fact in the Disputed Material Fact subsection, stating:

>    **RESPONSE:** Undisputed as to the citation, disputed because
>    there is a question of material fact as to whether Pierce had a
>    physical disability.

(Mann's Motion for Summary Judgment #80, p. 20). Mann's response violated Rule 7.1(D)(2)(b)(6) because Mann did not offer a relevant response to the Officers' observation that Ms. Pierce walks with a "twisting" motion. Additionally, Mann's response violated Rule 7.1(D)(2)(b)(2) because he did not provide any documentation to support his response. For these reasons, the Officers' asserted fact is admitted.

5.   **The Parties have Two Material Factual Disputes that Relate to the Excessive Force Claim. For Purposes of this Motion and Order, Both Factual Disputes are Resolved in the Manner Proposed by Mann.**

The first factual dispute relates to the manner in which Mann was taken to the ground during the First Arrest. Specifically, the Officers argue that Officer King grabbed Mann's right arm with both of his hands and pushed Mann forward with the right side of King's body. (Mann's Responsive Br. #98, p. 22). Mann argues that Officer King also tripped Mann and slammed him to the ground. (Mann's Responsive Br. #98, p. 22). In their Reply Brief, the Officers argue that Officer King initiated a "takedown," and Officer King did not "slam" Mann.[20] Drawing the facts in the light most favorable to the non-moving party, the Court will find that Officer King "tripped" Mann, pulled on Mann's arm, slammed Mann to the ground, and fell on Mann.

The second factual dispute is whether Officer King put his knee into Mann's back after King took Mann to the ground. The Officers argue that Officer King's knee fell on Mann's buttock, and Mann argues King put his knee on Mann's back after Mann was taken to the ground. Viewing the facts in the light most favorable to Mann, the Court

---

[20] Mann did not explain why he believed he was "slammed" to the ground. (Mann's Responsive Br. #98, p. 22). In other words, Mann did not explain why the word "slam" is a more accurate word to describe what occurred than the word "takedown." For the purposes of this litigation, the Court does not believe there is a material difference in classifying Officer King's force as a "takedown" or a "slam." The two words are synonyms. Additionally, Mann used both terms to describe Officer King's force during his deposition. (Ex. 1, Dep. of B. Mann, p. 121-22).

concludes Officer King drove his knee into Mann's back after Officer King took Mann to the ground.

## IV.   Procedural History

### A.  This Court Already Dismissed Counts 4 & 9

On December 5, 2017, Mann filed his original § 1983 Complaint against the Officers, the City of Urbana, and the Board of Trustees of the University of Illinois. (Mann's Complaint, #1, p. 1). Defendants filed a timely Motion to Dismiss, and, the Court dismissed the Fabrication of Evidence claim (Count 4), the *Monell* claim (Count 9), and the University of Illinois as a defendant. (Order on Motion to Dismiss, #38, p. 23).[21]

## V.   Legal Standard

### A.  Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court "has one task and one task only: decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). However, a court's favor toward the nonmoving party does not extend to drawing inferences that are only supported by speculation or conjecture. *See Singer,* 593 F.3d at 533. In addition, this court "need not accept as true a plaintiff's *characterization* of the facts or a plaintiff's legal conclusion." *Nuzzi v. St. George Cmty. Consol. Sch. Dist. No. 258*, 688 F. Supp. 2d 815, 835 (C.D. Ill. 2010) (emphasis in original).

---

[21] Mann's Amended Complaint retained the claims dismissed by this Court for purposes of preserving all potential arguments for appellate review. Mann does not seek to "reargue the dismissed claims." (Mann's Amended Complaint #41, p. 6–7).

The party opposing summary judgment may not rely on the allegations contained in the pleadings. *Waldridge*, 24 F.3d at 920. "[I]nstead, the nonmovant must present definite, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Koszola v. Bd. of Educ. of City of Chicago*, 385 F.3d 1104, 1111 (7th Cir. 2004), (quoting *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003)).

Specifically, to survive summary judgment, the nonmoving party "must make a sufficient showing of evidence for each essential element of its case on which it bears the burden at trial." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 936 (7th Cir. 2007), (citing *Celotex Corp.*, 477 U.S. at 322-323)). If the nonmovant does not come forward with evidence that would reasonably permit the finder of fact to find in his favor on a material question, then the court must enter summary judgment against him. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

## VI.   Analysis: The First Arrest and the Second Arrest were Supported by Probable Cause. Therefore, Defendants are Entitled to Summary Judgment for Counts 1, 2, 6, and 7.

Counts 1, 2, 6, and 7 are legally defeated if the Officers had probable cause for the two arrests. Count 1 is a claim for First Amendment Retaliation, which requires a plaintiff to prove the absence of probable cause. *Nieves v. Bartlett*, 139 S.Ct. 1715, 1724 (2019). Count 2 is a claim for false arrest, and the existence of probable cause is an absolute defense to a false arrest claim. *Gutierrez v. Kermon*, 722 F.3d 1003, 1007 (7th Cir. 2013). Count 6 alleges that the Officers conspired to arrest Plaintiff without probable cause, which is obviously not provable if probable cause existed. Count 7's claim of malicious prosecution, which, like the others, requires a plaintiff to prove an absence of probable cause for the action to succeed. *Holland v. City of Chicago*, 643 F.3d 248, 254 (7th Cir. 2011).

### A.  Legal Standard – Probable Cause

A police officer has probable cause to arrest a suspect when "the facts and circumstances that are known to him reasonably support a belief that the individual has

committed, is committing, or is about to be commit a crime." *Holmes v. Vill. Hoffman Estate*, 511 F.3d 673, 679 (7th Cir. 2007). "Probable cause requires more than a bare suspicion of criminal activity, but it does not require evidence sufficient to support a conviction." *Holmes*, 511 F.3d at 679. Probable cause is assessed objectively based on the information known to the officer at the time of the arrest. *Id.* Probable cause does *not* require "a showing that the officer's belief is more likely true than not." *Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 863 (7th Cir. 2010). Moreover, Plaintiff's later acquittal on the charges does not establish a lack of probable cause or lack of objective reasonableness. *Humphrey v. Staszak*, 148 F.3d 719, 728 (7th Cir. 1998).

A police officer may use "common sense and draw upon his training and experience in evaluating the totality of the circumstances confronting him[.]" *Holmes*, 511 F.3d at 679. Once probable cause is established, an officer has no duty to continue her investigation, and she does not have to credit an arrestee's denials of wrongdoing. *Sow v. Fortville Police Dept.*, 636 F.3d 293, 302 (7th Cir. 2011) (concluding that the officer was not required to contact an Ohio post office, as the suspect requested, to establish the $500.00 money order was not a forgery). Lastly, the "constitutionality of a warrantless arrest for a criminal offense turns on the existence of probable [cause] for the arrest." *Id.* at 301. If the officer had probable cause for the arrest, then a Fourth Amendment claim for false arrest is foreclosed. *Holmes*, 511 F.3d at 680. "If the facts sufficient to create probable cause are undisputed, probable cause is a question of law." *Potts v. city of Lafayette*, 121 F.3d 1106, 1112 (7th Cir. 1997). Based on the facts before the Court, taken in the light most favorable to the plaintiff, the determination of probable cause can be made as a matter of law in this case.

**B. Count 1 - First Amendment Retaliation: The Court Grants the Officers' Motion for Summary Judgment for Count 1 because the Two Arrests were Supported by Probable Cause.**

For Count 1, Mann argues both arrests were made in retaliation for his lawsuit against Matt Rush and the City of Champaign. "The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019). "Although probable cause should generally defeat a

retaliatory arrest claim, a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Nieves*, S. Ct. at 1727 (explaining that this exception is meant to prevent police officers from using their arrest powers to suppress speech).[22]

### i. The Facts that were Known to the Officers at the Time of the First Arrest (Car-Collision Incident) Reasonably Supported their Belief that Mann Recklessly Operated his Motor Vehicle and Committed a Battery.

The facts and circumstances that were known to the Officers at the time of the Car-Collision Incident reasonably supported their belief that Mann recklessly operated his car and committed a battery. First, there was substantial evidence that Mann intentionally drove his car into Koryasia Pierce's car in violation of the Illinois reckless driving statute.[23] Specifically, Ms. Pierce told police that Mann reversed his car until his car collided with Ms. Pierce's car. The side of Ms. Pierce's car was damaged and the rear of Mann's car was damaged.[24]

Second, there was substantial evidence Mann committed battery and struck Ms. Pierce. Specifically, *Mann told police* that he shoved Ms. Pierce, and Ms. Pierce told police that Mann punched her in the face.[25] Mann's admission that he intentionally pushed Pierce would have justified the Officers' conclusion that Mann committed battery.

Regardless, although the Officers faced conflicting evidence at the scene of the Car-Collision Incident, given the information available to the Officers at the time, it was

---

[22] In *Nieves*, the Supreme Court explained that if a person was arrested while jaywalking and complaining about police conduct, the probable-cause rule would not apply even though probable cause would exist for a jaywalking arrest. *Nieves*, 139 S. Ct. at 1727. "[W]e conclude that the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves*, 139 S. Ct. at 1727.

[23] "A person commits reckless driving if he . . . drives any vehicle with a willful or wanton disregard for the safety of persons or property[.]" 625 ILCS 5/11-503 (a)(1).

[24] In Mann's deposition, he stated that it was "obvious" the damage on his car looked like it came from impacting Ms. Pierce's car. (Ex. 1, Dep. of B. Mann, 53–56).

[25] Even though the Court is required to construe facts in the light most favorable to the non-moving party, the police were not under the same constraint when they were determining probable cause. Therefore, Ms. Pierce's assertion that she was twice punched in the face can be a basis to support probable cause.

reasonable for the Officers to believe Pierce's version of events and arrest Mann for battery and reckless driving.  In making a decision to arrest someone for criminal conduct that he did not witness, a police officer may rely on information provided to him by the victim or by an eyewitness to the crime that the officer reasonably believes is telling the truth. *Holmes*, 511 F.3d at 680 (*citing Pasiewicz v. Lake County Forest Preserve Dist.*, 270 F.3d 520, 524 (7th Cir. 2001); *Gramenos v. Jewel Cos.*, 797 F.2d 432, 439 (7th Cir.1986)). "So long as a reasonably credible witness or victim informs the police that someone has committed, or is committing, a crime, the officers have probable cause to place the alleged culprit under arrest...." *Id.* (quoting *Jenkins v. Keating*, 147 F.3d 577, 585 (7th Cir. 1998)).

Here, the Officers found Pierce crying behind a dumpster. She told Officers that Mann had intentionally hit her car, then punched her in the face. Her car had damage to the side panel, and Mann's car had damage to his rear bumper. Despite that Mann denied hitting Pierce's car, this physical evidence supported Pierce's version of events. Moreover, although Mann denied hitting Pierce, Officers observed swelling to her face and an apparent puncture wound on her neck. Yet, neither Mann nor Wade had any obvious injuries. This too supported Pierce's version of events that Mann was the instigator and had punched Pierce. It was reasonable for the Officers to credit Pierce over Wade and Mann. Therefore, the Court holds probable cause existed to arrest Mann following the Car-Collision Incident, and the First Arrest may not be used as a basis for a First Amendment Retaliation claim.

> **ii.  The Facts that were Known to the Officers at the Time of the Second Arrest (Domestic Incident) Reasonably Supported their Belief that there was a Valid Warrant for Mann's Arrest and that Mann Committed a Battery Against Two Officers.**

The facts and circumstances that were known to the Officers at the time of the Domestic Incident reasonably supported their belief that a valid warrant existed for Mann's arrest, and Mann committed a battery against the two officers. First, there was substantial evidence that the police possessed a valid warrant for Mann's arrest because Mann's name was on the warrant and he matched the physical description of the person described in the warrant. *United States v. Thornton*, 463 F.3d 693, 698 (7th Cir. 2006)

("Within three to four minutes of initially approaching Thornton, the officers learned that a warrant was outstanding for his arrest. That information supports probable cause for the arrest whether or not it was correct."); *Norris v. Serrato*, 761 Fed. Appx. 612, 615 (7th Cir. 2019) ("The existence of an outstanding warrant shows that a judge has found probable cause, and an arrest is proper when a warrant is based on probable cause."). Mann does not dispute or even address the validity of the warrant in the probable cause section of his brief. (Mann Responsive Br. #98, p. 45-53). Mann also does not address the argument that the warrant provided the Officers with probable cause to arrest Mann. (Mann Responsive Br. #98, p. 45-53).[26]  This valid warrant alone is enough to defeat the First Amendment Retaliation and False Arrest claims.

Second, the facts known to the officers at the time of the arrest also reasonably supported their belief that Mann committed a battery and obstructed a peace officer because they saw Mann close a door on two officers' feet. Illinois courts have concluded that closing a door on an individual's foot constitutes a battery. *People v. Pickens*, 822 N.E.2d 58, 65-66 (1st Dist. 2004) (affirming the defendant's conviction of battery where the defendant closed a door on his wife's foot.).

Mann argues there is no evidence in the record that "Mann *intentionally* caused McCellan or Franquemont any harm." (Mann Responsive Br. #98, p. 51) (emphasis added). Additionally, Mann argues: "Any insistence by Defendant Officers that Mann did *intentionally* [sic] make physical contact with Franquemont or McClellan constitutes a genuine dispute of material fact best decided by a finder of fact." (Mann's Responsive Br. #98, p. 52) (emphasis added).

Mann's argument lacks merit in this instance. Mann closed the door on the Officers' feet, and although he denies the context, Mann does not deny doing it. (Ex. 12, Dep. of J. Franquemont, 43:9–16); (Ex. 8, Dep. of A. Marcotte, 45:17–24). Construing all facts in Mann's favor, the Officers attempted to enter his apartment for a wellness check when Mann answered the door. Mann told Franquemont that he was not to enter his

---

[26] In Section VI(D), the Court will analyze whether the Officers could enter Mann's apartment pursuant to an arrest warrant.

apartment and began to close the door. At this moment, Franquemont used his foot to block the door and attempted to force his way into Mann's apartment. Despite the Officers' efforts, Mann was able to push the door closed, thereby denying them admission at that time.

The Court is determining whether the Officers had probable cause to arrest Mann for battery following this incident. At that moment, however, the Officers were *not required* to construe all facts in the light most favorable to Mann. In other words, the Court is determining if probable cause existed to arrest Mann for battery, and *not whether* a battery occurred when construing all the evidence in Mann's favor. The Officers were aware that they were attempting a wellness check on a reported domestic violence incident. The person answering the door, who they knew to be Mann, was refusing them entry. They attempted to enter anyway, and Mann used the door to physically keep them out. He closed the door on the Officers' feet. Mann then continued to push on the door until the Officers removed their feet, thereby allowing the door to close.

In Illinois, a person commits battery if he knowingly makes physical contact of an insulting or provoking nature with an individual. 720 ILCS 5/12-3 (2019). Even assuming facts and inferences in the light most favorable to Mann, while the initial contact may have been caused by the Officers putting their feet in the threshold, Mann continued to push the door until he was able to close it. This continued use of physical force was sufficient for the Officers to conclude that Mann was committing the act of battery against them, even if it was intended to keep them from his apartment. Therefore, even if the existence of the warrant did not support the arrest, probable cause existed that Mann had committed battery.[27]

---

[27] As will be described later, there also was probable cause that Mann committed the act of obstructing a peace officer.

### iii. Conclusion: The Court Grants the Defendants' Motion for Summary Judgment for the First Amendment Retaliation Claim Because there was Probable Cause for Both Arrests.

"The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019). Here, probable cause existed to arrest Mann during both arrests. As explained above, the Officers had probable cause to arrest Mann for battery and reckless driving. For the second arrest, Officers had a valid arrest warrant (and probable cause that Mann had committed battery against them). Therefore, the Court grants Defendants' Summary Judgment Motion for the First Amendment Retaliation claim.

### C. Count 2 – False Arrest: The Court Grants Defendants' Motion for Summary Judgment for the False Arrest Claim because Both Arrests were Supported by Probable Cause.

The Seventh Circuit has held "the existence of probable cause is an absolute defense to a § 1983 claim for false arrest." *Gutierrez v. Kermon*, 722 F.3d 1003, 1007 (7th Cir. 2013). "The burden of persuasion in a § 1983 case claiming a Fourth Amendment violation is clear: a plaintiff claiming that he was arrested without probable cause carries the burden of establishing the absence of probable cause." *McBride v. Grice*, 576 F.3d 703, 706 (7th Cir. 2009). To succeed on a false arrest claim, the plaintiff must prove that defendants did not have probable cause to arrest him.

For Count II, Mann argues there was no probable cause for the First Arrest or the Second Arrest. (Mann Responsive Br., #98, p. 45-53). As previously found, probable cause existed for both arrests. Therefore, the Court grants the Officers' Motion for Summary Judgment for Count 2 because probable cause is an absolute defense against a False Arrest claim.

### D. Count 6 – Conspiracy Under Federal and State Law: The Officers are Entitled to Summary Judgment for the Conspiracy Claim Because Mann Failed to Establish the Two Elements of the Claim.

Mann argues that the Officers had an in-person meeting during the Car-Collision Incident where they agreed to arrest Mann despite the absence of probable cause. (Amended Complaint #42, p. 16); (Mann's Responsive Br. #98, p. 57). Additionally, for

the Domestic-Related Incident, Mann argues the Officers agreed to enter Mann's home even if Mann was not committing a crime, and the Officers did not have a legal reason to enter his apartment. (Amended Complaint #42, p. 16); (Mann's Responsive Br. #98, p. 57). Mann does not provide any other factual basis for his Conspiracy claim. (Mann's Response Br. #98, p. 57-58).

To establish a § 1983 conspiracy theory, the plaintiff must show "(1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement." *Scherer v. Balkema*, 840 F.2d 437, 441 (7th Cir. 1988). Here, summary judgment is warranted because Mann failed to establish the two elements of the claim. First, Mann failed to establish that the Officers violated an underlying right. Second, Mann merely speculates, and he does not provide any evidence, the Officers conspired to arrest him without probable cause or enter his apartment in absence of legal authority.

During the Car-Collision Incident, three Officers met at the scene of the incident to discuss what the three Officers learned from having interviewed three different witnesses. Moreover, the scene was very chaotic, and the Officers needed to compare notes about their investigation. Mann does not offer any evidence or even present any argument that rebuts the Officers' assertion that they were comparing the stories of the three witnesses. (Mann's Responsive Br. #98, p. 57-58).

During the Domestic Incident, the Officers discussed how they would enter Mann's apartment because he refused to let them enter to check on the well-being of all occupants. As stated above, there is no evidence the Officers considered (or even cared) that Mann was a plaintiff in a lawsuit against the Champaign Police Department. Moreover, there was probable cause for Mann's arrest during the Domestic Incident, and, as will be explained below, the Officers lawfully entered Mann's apartment. Therefore, the Court grants the Officers' Motion for Summary Judgment because there is no issue as to a material fact, and the Officers are entitled to judgment as a matter of law.

E. **Count 7 - Malicious Prosecution Claim: The Officers are Entitled to Summary Judgment for the Malicious Prosecution Claim Because Mann Failed to Establish the Third and Fourth Element of the Five-Element Test for Malicious Prosecution.**

To prevail on a malicious prosecution claim under Illinois law,[28] a plaintiff must prove "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Holland v. City of Chicago*, 643 F.3d 248, 254 (7th Cir. 2011) (quoting *Swick v. Liautaud*, 662 N.E.2d 1238, 1242, (Ill. 1996)). "The absence of any single element is fatal to a claim." *Id.*

Mann's claims related to the previously discussed charges all fail because probable cause existed for the reasons explained above. But that does not end the discussion. Each charge for which Mann was prosecuted must be supported by probable cause. *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 683 (7th Cir. 2007). Mann argues that the Officers lacked probable cause for the "resisting a police officer" charges and the fact of bringing the charges, along with testifying at trial, demonstrates the two Officers acted with malice. (Mann's Response Br. #98, p. 58). Additionally, Mann argues Officer King acted maliciously because he rushed the investigation of the Car-Collision Incident that led to the First Arrest. (Mann's Response Br. #98, p. 60).[29]

i.    **There was Probable Cause to Support the Legal Proceedings that Mann Resisted the Officers During the First Arrest and the Second Arrest.**

As previously discussed, a police officer has probable cause to arrest a suspect when "the facts and circumstances that are known to him reasonably support a belief that the individual has committed, is committing, or is about to commit a crime." *Holmes v. Vill. Hoffman Estate*, 511 F.3d 673, 679 (7th Cir. 2007). In Illinois, a person is guilty of obstructing a peace officer if he "knowingly resists or obstructs the performance by one

---

[28] It is well established that the Seventh Circuit does not recognize malicious prosecution claims under Section 1983, and Mann does not argue as much. *Serino v. Hensley*, 735 F.3d 588, 593 (7th Cir. 2013).
[29] To the extent Mann argues that the Officers rushed the arrest without a proper investigation, that claim is one for false arrest, not malicious prosecution. *Serino*, 735 F.3d at 592-95.

known to the person to be a peace officer . . . of any authorized act within his or her official capacity[.]" 720 ILCS 5/31-1(a).

For the First Arrest, Mann admittedly lied to the Officers about hitting Pierce's car with his car. This certainly obstructed the Officers' investigation, which is an authorized act within their official capacity. For this reason, Mann failed to establish the third element of the malicious prosecution claim for the First Arrest.

For the Second Arrest, there was probable cause to bring charges against Mann for obstructing a police officer because he refused to obey the commands of the Officers. Officers reported to Mann's apartment because a neighbor reported sounds consistent with domestic violence and indicated that he believed a woman had been injured. Mann refused the Officers' request for a wellness check, closed the door against the Officers' feet, and denied the Officers' requests to check on Wade and any other possible occupants of the apartment. Peace officers are authorized to check on the safety of those who may be in harms way, particularly when they have credible information that someone may be at risk. *See Brigham City, Utah v. Stuart*, 126 S.Ct. 1943, 1949 (2006). For these reasons, Mann failed to establish the third element of the malicious prosecution claim for the Second Arrest.

### ii.   Mann also Failed to Establish the Officers Acted with Malice.

In Mann's Responsive Brief, Mann argues that Officers King and McClellan acted with malice by bringing charges because the charges lacked probable cause. (Mann's Responsive Br. #98, p. 58). Additionally, Mann argues Officer King acted maliciously because he rushed the investigation of the Car-Collision Incident that led to the First Arrest. (Mann's Responsive Br. #98, p. 60). Moreover, Mann argues McClellan acted with malice because there was significant doubt that Mann resisted arrest during the Domestic-Related Incident that led to the Second Arrest. (Mann's Responsive Br. #98, p. 60).

In the malicious prosecution context "[m]alice is defined as the initiation of a prosecution for any reason other than to bring a party to justice." *Holland v. City of*

*Chicago*, 643 F.3d 248, 255 (7th Cir 2011) (citing *Rogers v. People Gas, Light & Coke Co.*, 733 N.E.2d 835, 842 (2000)). "[M]alice can be inferred when a defendant lacks probable cause and the circumstances indicate a lack of good faith." *Id.*

Here, Mann argues the Officers acted with malice because they acted in absence of probable cause, and they rushed the investigation of the Car-Collision Incident. (Mann's Response Br. #98, p. 58-60). As stated above, probable cause was present for both arrests and the subsequent charges by the Officers. Additionally, "rushing an investigation" does not fit the definition of malice for a malicious prosecution claim, as articulated in *Holland*.

**VII.  Count 3 – Excessive Force: The Force Officer King Used on Mann was Reasonably Necessary to Effectuate the Arrest, and the Force Officer King Used was Proportional to the Threat that Mann Posed to the Officers.**

Mann argues the "[u]se of a leg sweep on a non-resisting person is unreasonable when there is no justifiable reason to believe that the person is attempting to evade arrest." (Mann's Responsive Br. #98, p. 36). Mann repeatedly argues that he did not resist arrest during the Car-Collision Incident and that the Officers should not have used any force against him. (Mann's Responsive Br. #98, p. 36-37).

**A.  Legal Standard – Excessive Force**

"The force employed by a police officer is deemed excessive if it was greater than reasonably necessary to effectuate the arrest." *Payne v. Pauley*, 337. F.3d 767, 778 (7th Cir. 2003) (quoting *Lester v. City of Chicago*, 830 F.2d 706, 713 (7th Cir. 1987)). To determine whether the force was excessive the Court must decide whether the officers' actions were objectively reasonable "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Chapman v. Keltner*, 241 F.3d 842, 847 (7th. Cir. 2001) (internal quotation marks omitted) (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Relevant factors to this evaluation include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

**B. The Forced Used on Mann was Reasonably Necessary to Effectuate his Arrest and Proportional to the Threat he Posed.**

This Court must consider the facts in the light most favorable to the Plaintiff. In this case, any factual dispute that might exist in this case is not sufficient to deny summary judgment because under any view of the facts it was reasonable for the Officers to use the force they used. Following the decision to arrest Plaintiff, Officers Wright, King, Loschen, and one other officer approached Mann's apartment. One of the officers knocked on the apartment door, and Wade allowed them to enter. King and the other officers entered the apartment and, within 30 to 60 seconds, the Officers had arrested Mann.

Upon entering the apartment, the Officers saw Mann with his back turned to them. Officer King grabbed Mann's arm to arrest him. Mann reached for the pocket of his pants. According to Mann, he had a fake tooth in his hand, and he was reaching for his pants to drop the tooth in his pocket. Officer King believed that Mann was possibly reaching for a weapon. Next, King pushed Mann forward, tripped him, and slammed him to the ground, while maintaining control of Mann's arm. After slamming Mann to the ground, King put his knee in Mann's back. Officer Wright also grabbed Mann's other arm, and fell to a kneeling position next to Mann. Officer King handcuffed Mann, and the Officers walked him to the squad car.

Officer King's use of force was objectively reasonable given the facts that confronted him. Officer King was tasked with arresting Mann when there was probable cause to believe Mann had committed two violent acts, battery and intentionally hitting another person's car with his own car. *Graham*, 490 U.S. at 396 (stating the severity of the alleged crime at issue is a relevant factor in evaluating whether the force was objectively reasonable). The arrest occurred in Mann's apartment, and the Officers had not checked Mann for weapons since he re-entered his apartment. Dispatch had notified the Officers that there may be a gun at the scene of the incident. Although the Officers found no gun on Mann in the parking lot, they were aware that he had been to his apartment, returned to the lot prior to their arrival, and again went to his apartment prior to the arrest. At the

time of the arrest, they had not recovered any gun from the scene. *Graham*, 490 U.S. at 396 (stating whether the suspect poses an immediate threat to the officers is a relevant factor in evaluating whether the force was objectively reasonable). Lastly, as the Officers began to initiate the arrest, Mann, who had his back turned to the Officers, reached for his pants pocket. Mann's attempt to reach for his pocket created a potential threat to the Officers. (Mann's Responsive Br. #98, p. 13, p. 22, p. 40, p. 51). Given the totality of the circumstances created by these facts, it was reasonable for Officer King to use the force that Mann described.

The Court's decision here is guided in part by the Seventh Circuit's decision in *Dawson* involving a similar use of force. *Dawson v. Brown*, 803 F.3d 829 (7th Cir. 2015). In *Dawson*, a suspect ignored the police's attempt to pull him over after the officer observed the suspect speeding. *Dawson*, 803 F.3d at 830. Eventually, the suspect drove to his father's house, got out of his truck, and ran into the backyard. *Id.* at 830. After a short chase, one of the officers grabbed the suspect, but struggled to apprehend him. During the officer's struggle with the suspect, the suspect's 72-year-old father approached to within three or four feet. *Id.* at 833. In response, the officer kicked the father while he continued to struggle with the suspect.[30] *Id.* at 833. Mere seconds after the kick, another officer tackled the 72-year-old father to the ground. *Id.* at 833-34. The 72-year-old father sued the police for excessive force relating to that tackle.

The Seventh Circuit concluded: "under any view it was reasonable for [the officer] to believe that [the father] was attempting to interfere with a lawful arrest." *Id.* at 834. The Seventh Circuit explained that the officers were in a "dangerous position due to his inability to subdue the non-compliant suspect." *Id.* at 834. The Seventh Circuit concluded: "a reasonable officer under these circumstances could reasonably believe it was necessary to tackle [the father] to protect [the other officer] from [the father's] interference with a lawful arrest." *Id.* at 834 (citing *Smith v. Ball State University*, 295 F.3d 763, 770 (7th Cir. 2002)). The Seventh Circuit concluded that the tackling officer did not use excessive force,

---

[30] The legality of Officer Warnisher's kick was not evaluated in this opinion.

acted as a reasonable officer under the circumstances, and the officer did not violate the father's Fourth Amendment rights. *Id*. at 835.

The use of force in both cases are nearly identical. They involved a tackle, which is not a particularly heightened degree of force. Although the risk in *Dawson* may have been somewhat greater due to the active resistance by one party, the threat to officers in this case is sufficiently close to compare the two cases. The 72-year old father who was tackled in *Dawson* was not actively involved in the resisting arrest. He was, however, within 3-4 feet of the altercation and giving limited indication that he might try to intervene. Here, the arrest occurred in Mann's apartment, and he reached for his pants pocket during the arrest when officers had been warned that somebody might have a gun. As the Seventh Circuit noted in *Dawson*, when police officers face a fluid situation, they are entitled to graduate their response to meet the demands of the circumstances confronting them. *Id*. at 834 (quoting *Smith v. Ball State University*, 295 F.3d 763, 770 (7th Cir. 2002)).

Therefore, the Court grants the Officers' Motion for Summary Judgment as to Mann's excessive force claim because the force Officer King used was objectively reasonable.

### F. Count 5 - Illegal Search: The Search of Mann's Apartment during the Second Arrest was Legal Because it was Initiated Pursuant to a Valid Arrest Warrant and Because Exigent Circumstances Existed that Justified the Officers' Entry.

For Count 5, Mann argues the search was improper under the Fourth Amendment because the Officers did not have a proper arrest warrant or probable cause to justify the entry into Mann's apartment. (Amended Complaint, #42 p. 15-16). Specifically, Mann argues the warrant was not valid because the warrant listed a different address as Mann's home address. (Mann's Responsive Br. #98, p. 42).

### i. The Arrest Warrant was Valid, and the Arrest Warrant Permitted Entry into Wade's Apartment.

Mann argues the police needed a search warrant to enter Mann's girlfriend's apartment because the arrest warrant listed a different address. (Arrest Warrant, #80-8,

p. 1); (Mann's Responsive Br., #98 p. 41-45). In other words, Mann argues the warrant was insufficient to justify entry by police because the warrant stated Mann's address was 807 S. Urbana Ave., and the police entered 810 Oakland Ave., Apt. 201, to arrest Mann. (Mann's Responsive Br. #98, p. 42). Mann also argues that the Seventh Circuit's opinion in *Wilhelm* states that police are required to terminate the search if the warrant puts them on notice they are targeting the wrong location. *Jones v. Wilhelm*, 425 F.3d 455, 464 (7th Cir. 2005) ("Furthermore, if an officer obtains information while executing a warrant that puts him on notice of a risk that he could be targeting the wrong location, then the officer must terminate his search.")

Mann's argument is wrong. The Warrant Clause of the Fourth Amendment "categorically prohibits the issuance of any warrant except one particularly describing the place to be searched and the persons or things to be seized." *Jones v. Wilhelm*, 425 F.3d 455, 462 (7th Cir. 2005). A search conducted "pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." *Jones v. Wilhelm*, 425 F.3d 455, 462 (7th Cir. 2005). In *Wilhelm*, the Seventh Circuit concluded that a police officer violated the Fourth Amendment because he exploited a facially ambiguous search warrant. In that case, the search warrant instructed officers to search "the upstairs apartment on the right" at 220 W. Burnett Avenue.[31] *Wilhelm*, 425 F.3d at 462. The police officer was familiar with this address, and the police officer knew this address was for an apartment building that had two different staircases. *Wilhelm*, 425 F.3d at 463. The police officer also knew that if he took the back staircase, then the "the upstairs apartment on the right" would lead to the defendant's apartment. *Wilhelm*, 425 F.3d at 463. However, if the police officer took the front staircase, then the warrant would lead to a different apartment. *Wilhelm*, 425 F.3d at 463. The Seventh Circuit concluded: "Where a warrant is open to more than one interpretation, the warrant is ambiguous and invalid on its face and, therefore, cannot be legally executed by a person who knows the warrant to be ambiguous." *Wilhelm*, 425 F.3d at 463.

---

[31] The search warrant in Wilhelm did *not* list the name of the apartment's occupant. *Wilhelm*, 425 F.3d at 458.

There is nothing similar about the case at bar and *Wilhelm*. First, this case involves an arrest warrant, not a search warrant. Second, there is nothing ambiguous about the arrest warrant, and Mann does not dispute that the arrest warrant identified him, his physical characteristics, and was "facially valid." (Mann's Responsive Br. #98, p. 41).

This case is directly analogous to *United States v. Jackson*. In *Jackson*, the police executed an arrest warrant for Jackson at an acquaintance's apartment where Jackson had been staying. *United States v. Jackson*, 576 F.3d 465, 467 (7th Cir. 2009).[32] Jackson argued the search was unlawful, and the District Court denied the motion because "the police reasonably believed that Jackson was within [his father's girlfriend's] apartment when they entered." *Jackson*, 576 F.3d at 467. The Seventh Circuit "reject[ed] Jackson's argument that the police needed a search warrant as well as an arrest warrant in order to enter [Jackson's father's girlfriend's] apartment in order to arrest him." *Jackson*, 576 F.3d at 467. The Seventh Circuit stated: "[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Jackson*, 576 F.3d at 467-68 (alteration in original). In holding that an arrest warrant authorized entry into a third party's home to execute the arrest, the Seventh Circuit also required some basis for believing the target of the warrant was present before entering. The Seventh Circuit stated, "Although officers do not need a search warrant to execute an arrest warrant in a third party's home, they do need *some* basis for believing that the suspect is actually present in the home." *Jackson*, 576 F.3d at 468 (emphasis in original). The Court found the entry and search constitutional.

Given this framework, the arrest warrant for Mann carried implicit authority to execute the warrant at Mann's girlfriend's apartment provided the Officers had a sufficient basis to believe that Mann was in the apartment. The Officers possessed a valid arrest warrant and knew that Mann was present in the residence. Mann opened the door, and Officer Franquemont recognized Mann because he testified against Mann at a recent

---

[32] The police were unsuccessful in their attempt to locate Jackson at the homes of multiple relatives. *Jackson*, 576 F.3d at 467.

trial. Officer Franquemont informed Officers Mikalik and Difanis that he recognized the suspect as Benjamin Mann. Mann also called the police to complain about their presence outside his apartment. Additionally, Officer Difanis remembered that she was one of the Officers that had arrested Mann at this same address approximately four months prior. They had more than a sufficient basis for probable cause; they knew he was in the apartment because they actually saw him inside.

> ii.    **The Search of Mann's Apartment During the Second Arrest was also Legal Because it was Initiated Pursuant to Exigent Circumstances.**

The Officers' search of Mann's apartment was also valid because exigent circumstances existed at the time of the Officers' entry. Under the Fourth Amendment "searches and seizures inside a home without a warrant are presumptively unreasonable[.]" *Michigan v. Fisher*, 558 U.S. 45, 47 (2009). However, this presumption can be overcome. *Fischer*, 558 U.S. at 47. "[L]aw enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Fischer*, 558 U.S. at 47; *see also Brigham City, Utah*, 547 U.S. at 404-07. This exception does not depend on the officers' subjective intent, but "requires only an objectively reasonable basis for believing, that a person within [the house] is in need of immediate aid." *Fischer*, 558 U.S. at 47 (internal quotation marks omitted) (alteration in original). Additionally, the Seventh Circuit has held that a 911 call informing law enforcement of an assault "can be enough to support warrantless searches under the exigent circumstances exception, particularly where . . . the caller identified himself." *U.S. v. Jenkins*, 329 F.3d 579, 581 (7th Cir. 2003).

Here, Tim Seaton called police to report a domestic violence incident in the apartment directly above his own. Tim Seaton identified himself by name and his location during the 911 call, telling dispatch that he heard loud banging noises, groans, and whimpers coming from the apartment above him (i.e., Wade and Mann's Apartment). The caller also told dispatch that he was "awoken" by these sounds, which he confirmed for the Officers when they arrived on the scene. This information was

partly corroborated when the Officers arrived at the apartment complex to find the only light illuminated was coming from Mann's apartment. In addition, Mann answered the door when Officers knocked, but refused their entry. Officers were able to see a female in the apartment but were unable to determine whether she was safe or in distress. This information was enough to justify the warrantless entry.

In Mann's Response, he argues that exigent circumstances did not exist because Mann and Wade told police they were fine. (Mann's Responsive Br. #98, p. 44). Although not cited by Mann, presumably the argument is intended to draw on the Seventh Circuit's opinion in *Hawkins v. Mitchell*, 756 F.3d. 983 (7th Cir. 2014). In *Hawkins*, officers were dispatched for a possible domestic abuse. They arrived to discover there had been no physical altercation, the reported victim was safe outside the residence, and she apologized for having called police. There, the Seventh Circuit concluded that the officers should not have entered the residence because the reported domestic abuse had been dispelled by what they learned when they arrived. Specifically, there was no evidence of physical harm to anyone. *Id.* at 993.

That is not the case here, however. Instead, none of the information learned through the 911 call was dispelled. Mann refused to allow officers to see the reported victim (according to the caller, a female sounded like she was crying and whimpering). Officers were able to see her through a window, but they could not determine her well-being from that vantage point. Although Mann, from behind a closed door, loudly asked her if she was safe, and she responded that she was, this does not undermine the report. In domestic violence cases, victims do not always inform police officers they need help when they are in the presence of their abusers. A domestic violence report was made to law enforcement, and the caller identified Mann's apartment. Officers observed that Wade was in an apartment with Mann behind a locked door, but could not ascertain her safety or condition. Therefore, it was reasonable for the Officers to disregard Wade's and Mann's assurances that she was fine. *See United States v. Tepiew*, 859 F.3d 452 (7th Cir. 2017).

The Officers possessed an objectively reasonable basis to believe a person within the apartment needed the Officers' immediate aid and/or protection. *Fischer*, 558 U.S. at 47. The Court is persuaded that the Tim Seaton's 911 call, where he identified himself, along with corroborating information, provided police with a reasonable belief that a person within the apartment needed their help or needed to be protected from further injury. The Court concludes exigent circumstances existed, and the entry into the apartment was legally permissible, even if the arrest warrant was not sufficient. The Officers' Motion for Summary Judgment for the Illegal Search claim in Count 5 is Granted.

C.   **Count 8 – Intentional Infliction of Emotional Distress ("IIED"): The Court Grants the Officers Motion for Summary Judgment for the IIED Claim Because Mann Failed to Establish the First and Second Element of the Three-Element Test.**

The Officers' Motion for Summary Judgment is granted because Mann failed to establish the first and second elements of the three-element test for IIED. Under Illinois law, a person may recover damages for IIED only if she establishes:

> (1)   the defendant's conduct was truly extreme and outrageous; (2) the defendant intended to inflict severe emotional distress (or knew that there was at least a high probability that its conduct would cause severe emotional distress); and (3) the defendant's conduct did in fact cause severe emotional distress.

*Richards v. U.S. Steel*, 869 F.3d 557, 566 (7th Cir. 2017) (citing *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003)).

Mann argues Officer King's conduct satisfies IIED due to the takedown that Officer King initiated against Mann. (Mann's Responsive Br. #98, p. 60-61). Specifically, Mann argues Officer King's takedown was "extreme and uncalled for." (Mann's Responsive Br. #98, p. 61). Mann also argues: "Of course, King's action caused Mann severe emotional distress." (Mann's Responsive Br. #98, p. 61). Lastly, Mann notes he

was "unarmed and therefore was not reaching for anything." (Mann's Responsive Br. #98, p. 62).

The First Element of the IIED claim has not been satisfied because it was reasonable for Officer King to believe that Mann was reaching for a weapon, take Mann to the ground, and prevent him from using a possible weapon against police.  As described earlier, the use of force was constitutional. For these reasons, Officer King's use of force was not extreme or outrageous and cannot be the basis of this claim. Second, there is no evidence Officer King intended to cause Mann severe emotional distress when he took him to the ground. Instead, the facts suggest that Officer King reasonably feared for the Officers' safety and was exercising the force necessary to effect an arrest. Therefore, the Officers are entitled to summary judgment because there is no issue as to a material fact, and Mann failed to establish two necessary elements for an IIED claim.

### D.  Count 10 & Count 11: The Court Grants the Officers' Motion for Summary Judgment for the *Respondeat Superior* Claim and Indemnification Claim

Mann seeks to hold the City of Urbana liable for the Officers' actions under Indemnification and *Respondeat Superior*. (Amended Complaint, #42, p. 21-23); (Mann's Responsive Br. #98, p. 62). However, there is no underlying claim to support *Respondeat Superior* or an Indemnification claim. Therefore, the Court grants the Officers' Motion for Summary Judgment on these counts, as well.

### E.  Conclusion

The Officers' Motion for Summary Judgment is GRANTED in its entirety. Specifically, the Officers' Motion for Judgment for the First Amendment Retaliation claim, False Arrest claim, Excessive Force claim, Illegal Search claim, Conspiracy claim, Malicious Prosecution claim, Respondeat Superior claim, and Indemnification claim is GRANTED.

**IT IS, THEREFORE, ORDERED:**

**Defendants' Motion for Summary Judgment (#80) is GRANTED. The Court directs the Clerk to enter judgment in Defendants' favor and against Plaintiff. All pending motions are denied as moot, and this case is terminated with the parties to bear their own costs. All deadlines and settings on the Court's calendar are vacated.**

ENTERED this 3rd day of January, 2020.

s/ERIC I. LONG
UNITED STATES MAGISTRATE JUDGE